# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| TAMIE STROUSE, | ) | CASE NOS.: 4:18CV00099 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| v. | ) | |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | **MEMORANDUM OF OPINION AND ORDER** |
| | ) | |
| Defendant. | ) | |

This matter is before the Court on Plaintiff Tamie Strouse's ("Plaintiff") objections to the Magistrate Judge's Report and Recommendation ("R. & R."), which recommended that the Commissioner of Social Security's denial of Plaintiff's applications for a Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") pursuant to Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq.*, be affirmed. (R. & R. 1, ECF No. 17.)

For the following reasons, Plaintiff's objections to the Magistrate Judge's R. & R. are overruled. Therefore, the Magistrate Judge's R. & R. is adopted in full, and the final decision of the Commissioner of Social Security denying Plaintiff's applications for a POD, DIB, and SSI is affirmed.

## I. BACKGROUND

As a brief procedural background, on October 27, 2014, Plaintiff filed applications for POD, DIB, and SSI, with an alleged onset date of disability as September 1, 2014. (Tr. 63-64, 74-75, 86-87, ECF No. 11.) In her applications, Plaintiff claimed disability due to "lymes disease, lymes neurological, lymes arthritis, chronic pain – neck to feet, concentration, sleep apnea, ibs, status

post implant for urgenic syncopee [sic], depression, anxiety, bipolar." (*Id.* at 63-64, 74-75, 181.) On May 4, 2015, Plaintiff's applications were denied, and thereafter, on May 17, 2015, Plaintiff requested a hearing before an administrative law judge ("ALJ"). (*Id.* at 90-101.)

The ALJ held a hearing on July 20, 2016, at which Plaintiff appeared and testified. (*Id.* at 39-62.) On November 23, 2016, the ALJ issued a written decision finding Plaintiff not disabled pursuant to the definitions and requirements of the Social Security Act. (*Id.* at 12-32.) Plaintiff requested a review the ALJ's decision by the Appeals Counsel on January 20, 2017. (*Id.* at 147-49.) Ultimately, on November 15, 2017, the Appeals Counsel declined to review the ALJ's decision, rendering it final. (*Id.* at 6-9.)

On January 12, 2018, Plaintiff filed a Complaint requesting judicial review of the ALJ's decision. (Compl., ECF No. 1-1.) As this Court has jurisdiction to review the final determination of the Commissioner of Social Security, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), the matter was automatically referred to a United States Magistrate Judge for a Report and Recommendation consistent with Local rule 72.2(b)(1). (*See* Docket Entry 1/16/2018.)

Through briefing submitted to the Magistrate Judge, Plaintiff argued that the ALJ erred by failing to properly weigh the opinions of two mental health professionals, Dr. MacNealy and Dr. Conti, when determining Plaintiff's non-disabled status. (Pl.'s Br. 5-9, ECF No. 12.)[1] On December 10, 2018, after briefing for this matter was completed, the Magistrate Judge issued his R. & R. recommending that the Commissioner of Social Security's final decision denying Plaintiff's applications for POD, DIB, and SSI be affirmed. (R. & R. 1, ECF No. 17.)

---

[1] Plaintiff's allegations of error against the ALJ are for Plaintiff's mental health impairments only. (Pl.'s Br. 2 n.2, ECF No. 12 (stating "Plaintiff's allegations of error center upon the ALJ's weighing of medical opinions related to her mental health impairments . . .").) Plaintiff does not allege error with the ALJ's findings regarding any of Plaintiff's other claimed disabling conditions. Therefore, none of Plaintiff's physical health conditions will be discussed herein.

Plaintiff timely filed her objections to the R. & R. on December 18, 2018, to which the Commissioner of Social Security responded on January 29, 2019. (Obj. to R. & R., ECF No. 18; Resp. to Obj. to R. & R., ECF No. 19.)

The Magistrate Judge's R. & R. contains a detailed factual background for this matter. (R. & R. 2-17, ECF No. 17.) As Plaintiff has not objected to or demonstrated any error contained in that stated background, this Court will not reiterate it herein.

## II. STANDARD OF REVIEW

When written objections to a Magistrate Judge's R. & R. are timely submitted, this Court must review *de novo* those portions of the R. & R. specifically objected to. 28 U.S.C.S. § 636(b)(1) (LexisNexis 2019). A general objection to the entirety of the Magistrate Judge's R. & R. is not sufficient to trigger review by this Court. *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Specific objections to the Magistrate Judge's R. & R. are necessary in order to focus this Court's attention to specific issues for review. *Id.* Accordingly, Plaintiff's specific objections appear to be that the Magistrate Judge erred in agreeing with the ALJ's assignment of minimal weight to the opinions of two mental health professionals because psychiatric hospitalizations and personal symptom reports were not properly considered. (Obj. to R. & R. 1, ECF No. 18.)

Given these objections, this Court must determine whether the ALJ's decision to assign minimal weight to the opinions of two mental health professionals: 1) is supported by substantial evidence contained in the record, considered as a whole; and 2) was made utilizing the proper legal standards. *Bartyzel v. Comm'r of Soc. Sec.*, 74 F. App'x 515, 522-23 (6th Cir. 2003). *See also Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010).

Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (internal quotation marks omitted)). It is "more than a scintilla of evidence, but less than a preponderance." *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal quotation marks omitted)).

Determining whether substantial evidence supports the ALJ's decision must be made by examining the record as a whole. *Queen City Home Health Care Co. v. Sullivan*, 978 F.2d 236, 243 (6th Cir. 1992) (citing *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989)). *See also Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992) (citing *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980)); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). So long as substantial evidence contained in the record supports the ALJ's decision, the decision must be affirmed even if this Court would decide the matter differently or even if substantial evidence contained in the record could also support the opposite decision. *Cutlip*, 25 F.3d at 286 (citing *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). This "standard allows considerable latitude to administrative decision makers. It presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen*, 800 F.2d at 545 (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984) (internal quotation marks omitted)).

This Court must also consider whether the proper legal standards were utilized by the ALJ in reaching her decision. *Queen City Home Health Care Co.*, 978 F.2d at 243. *See also Cutlip*, 25 F.3d at 286 (citing *Richardson*, 402 U.S. at 401); *Bartyzel*, 74 F. App'x at 522-23; *Ealy*, 594 F.3d

at 512 (citing *Rogers*, 486 F.3d at 241). A failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.") (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## III. LEGAL ANALYSIS

In his R. & R., the Magistrate Judge found that the ALJ's decision to apply minimal weight, instead of controlling weight, to the opinions of two mental health professionals was supported by substantial evidence contained in the record and was made utilizing the proper legal standards. (R. & R. 32, 37, ECF No. 17.) Plaintiff objects to these findings, arguing that Plaintiff's psychiatric hospitalizations and personal symptom reports were not properly considered by the ALJ or the Magistrate Judge when weighing the medical opinions of the two mental health professionals. (Obj. to R. & R. 1, ECF No. 18.)

The rules and regulations of the Social Security Administration address and explain the exercise in which an ALJ must engage when considering medical opinion evidence. *See* 20 C.F.R. §§ 404.1527, 416.927 (2017).[2] *See also* Soc. Sec. Ruling 96-2p, 1996 SSR LEXIS 9 (July 2, 1996).[3] Accordingly, the medical opinion of a treating source must be given "controlling weight" if: "(1) the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) the opinion is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (quoting 20 C.F.R. §

---

[2] As Plaintiff's applications for POD, DIB, and SSI were filed prior to March 27, 2017, these are the appropriate sections for application and analysis.

[3] Social Security Ruling 96-2p was rescinded March 27, 2017. However, because Plaintiff's applications for POD, DIB, and SSI were filed prior to March 27, 2017, this is the appropriate ruling for application and analysis.

404.1527(c)(2)) (internal quotation marks and alterations to original omitted). Consequently, an ALJ is not required to give "controlling weight" deference to a treating source's medical opinion if there is substantial evidence contrary to the opinion. *See Smith v. Comm'r of Soc. Sec.*, 482, F.3d 873, 877 (6th Cir. 2007). Additionally, an ALJ is not bound by a treating source's conclusory opinion that a plaintiff is not able to work. *See Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007).

An ALJ is also not required to give the opinion of a treating source "controlling weight" when the treating source's medical opinion is based in large part on the plaintiff's own subjective account of her symptoms and limitations – an accounting which is properly discounted by substantial evidence contained in the record – or when a treating source's own treatment records contradict her medical opinion. *See Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 391 (6th Cir. 2004) (concluding that the ALJ did not err by disregarding the opinion of a treating source that was based largely upon the conclusion of a different physician and the subjective assessment of the plaintiff); *Tate v. Comm'r of Soc. Sec.*, 467 F. App'x 431, 433 (6th Cir. 2012) (agreeing that the ALJ properly discounted the opinion of a treating source that appeared to be based upon the subjective complaints of the plaintiff without objective support from the record). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530 (6th Cir. 1997) (explaining that the ALJ did not err by not adopting the opinion of a treating source that plaintiff was disabled because evidence contained the treating source's own reports did not support that position); *Payne v. Comm'r of Soc. Sec.*, 402 F. App'x 109, 112-13 (6th Cir. 2010) (noting that an ALJ's rejection of a treating source's opinion is proper when the opinion is not supported by objective evidence in the record, including the treating source's own notes); *Leeman v. Comm'r of Soc. Sec.*, 449 F. App'x 496, 497 (6th Cir. 2011) (stating "ALJs may discount treating-physician opinions that are inconsistent with substantial

evidence in the record, like the physician's own treatment notes"); *Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 549-50 (6th Cir. 2014) (finding that the ALJ properly rejected a treating source opinion that plaintiff could no longer work as his treatment notes directly undermined his opinion).

When giving a treating source opinion less than "controlling weight," an ALJ "must apply certain factors – namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source – in determining what weight to give the opinion." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). *See also* 20 C.F.R. §§ 404.1527(c)(1)-(6); 416.927(c)(1)-(6) (2017).

Finally, in support of the weight assigned to a treating source opinion, if less than "controlling weight," an "ALJ must provide 'good reasons' for discounting treating physicians' opinions, reasons that are 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007) (quoting Soc. Sec. Ruling 96-2p, 1996 SSR LEXIS 9, at *12 (July 2, 1996)).

**A. The ALJ's Assignment of Minimal Weight to Dr. MacNealy's Medical Opinion is Supported by the Substantial Evidence of the Record in its Entirety and Was Made Utilizing Proper Legal Standards.**

Dr. MacNealy, a mental health professional, had two office visits with Plaintiff – one on March 6, 2016 and one on April 6, 2016. (Tr. 1243-49, ECF No. 11.) Thereafter, on July 19, 2016, he submitted his medical opinion. (*Id.* at 1239-42.) In providing his medical opinion, by way of filing out a Medical Impairment Questionnaire, Dr. MacNealy opined that Plaintiff, with respect to work-related mental activities, was extremely functionally limited in activities of daily living, maintaining social functioning, remembering, understanding, and carrying out instructions, and

the ability to complete a normal workday and work week, among various other work-related mental activities. (*Id.* at 1241-42.) Dr. MacNealy also opined that for those work-related mental functions in which Plaintiff was not extremely limited, she was markedly limited, which is defined as "more [than] moderate, but less than extreme." (*Id.*) Of note, for every listed work-related mental activity on the Mental Impairment Questionnaire, of which there were twenty-four, Dr. MacNealy marked that Plaintiff was either markedly limited or extremely limited, the most severe limitation options out of five total limitation options. (*Id.*) Dr. MacNealy also indicated that he believed Plaintiff's prognosis was "poor" and opined that Plaintiff was unable to work because she needed to stay in her room all day in order to avoid environmental stimuli and triggers. (*Id.* at 1240-41.)

In analyzing Dr. MacNealy's medical opinion, the ALJ assigned minimal weight rather than controlling weight. (*Id.* at 29.) Consistent with legal requirements, the ALJ provided good reasons for discounting Dr. MacNealy's medical opinion. (*Id.*) Most importantly, the ALJ found that Dr. MacNealy's own treatment records were inconsistent with his "grave and dire assessment." (*Id.*) In fact, Dr. MacNealy's treatment records reflect that during his two office visits with Plaintiff he noted that Plaintiff had a depressed mood, which he characterized as normal, that Plaintiff had no other mental status abnormalities, and that Plaintiff was responding slowly to medication. (*Id. See also id.* at 1243-49.) Accordingly, the ALJ concluded that Dr. MacNealy's mild findings in his treatment notes "are not, in any way, consistent with the rather dire assessment he submitted, and are inconsistent with the marked and extreme functional limitations contained therein." (*Id.* at 29.)

Lack of consistency between a treating source's medical opinion and treatment notes is a "good reason" to assign less than "controlling weight" to the treating source's opinion. In addition, contrary to Plaintiff's assertion that the ALJ, and subsequently the Magistrate Judge, failed to

consider Plaintiff's psychiatric hospitalizations when weighing Dr. MacNealy's opinion, the record as a whole contains substantial evidence that is inconsistent with Dr. MacNealy's medical opinion. Plaintiff specifically argues that because the ALJ did not reference Plaintiff's psychiatric hospitalizations when weighing Dr. MacNealy's opinion, the hospitalizations were not properly considered and had they been, they would have supported Dr. MacNealy's opinion. (Obj. to R. & R. 2, ECF No. 18.)

This argument, however, is problematic. When determining the severity of Plaintiff's mental health impairments, the ALJ discussed, at length, Plaintiff's multiple psychiatric hospitalizations and mental health history. (Tr. 20-23, ECF No. 11.) With each of Plaintiff's psychiatric hospitalizations, the ALJ noted that upon discharge, Plaintiff had responded positively to treatment and had an improved and stable mood. (*Id.* at 20-21.) Furthermore, as aptly stated by the ALJ, "with the exception of the several episodes of reported suicidal ideation, the record consistently notes that the claimant is cooperative, exhibits generally normal behavior, logical thought process, and essentially normal thought content." (*Id.* at 25.) The ALJ also concluded, Plaintiff "has sought treatment for increased depression with suicidal ideation, but her symptoms improved quickly with appropriate treatment and mental status evaluations from multiple sources note only mild to no more than moderate symptoms that are inconsistent with the marked degree of functional impairment she alleged." (*Id.* at 27.)

It is clear from the ALJ's statements that she consistently took into consideration Plaintiff's psychiatric hospitalizations, as well as the rest of record before her, when making her decisions. Plaintiff's assertion that the ALJ failed to consider the record as a whole when weighing the opinion of Dr. MacNealy is not well taken.

Plaintiff also objects that the ALJ did not properly provide her with a reasonable accommodation for her psychiatric hospitalizations when determining her residual functional capacity. (Obj. to R. & R. 2, ECF No. 18.) In particular, Plaintiff requests an accommodation of absenteeism for her psychiatric hospitalizations. (*Id.*) This objection is also not well taken. In discussing Plaintiff's psychiatric hospitalizations, the ALJ looked to the entirety of the record and concluded that Plaintiff's psychiatric hospitalizations on the whole are "reactive to situational stressors, including difficulty in romantic relationships and reported increases in physical symptoms (which were not corroborated by the record)." (Tr. 25, ECF No. 11.) Furthermore, the ALJ determined that the record consistently supports the conclusion that "[t]here is no evidence of a thought disorder or cognitive impairment . . .". (*Id.*)

Even with these well-supported conclusions, the ALJ did accommodate Plaintiff for her mental health impairments by deciding that Plaintiff should only perform simple, repetitive tasks that are low stress in nature. (*Id.* at 25-26.) The ALJ even stated that the limitations imposed "take into account the possible effects of [Plaintiff's] alleged mental impairments, in light of normal cognitive and memory function . . . and take into consideration [Plaintiff's] . . . intermittent treatment for exacerbations of depression and suicidal ideation." (*Id.* at 26.) Therefore, the Plaintiff's request for the specific accommodation of absenteeism is not well taken. The ALJ, consistent with the substantial evidence contained in the entirety of the record, properly afforded Plaintiff with reasonable accommodations for her alleged mental impairments when determining Plaintiff's residual functional capacity.

Therefore, considering the sum of this discussion and Plaintiff's objections, this Court overrules Plaintiff's objections. It is clear that the ALJ's determination to assign minimal weight to Dr. MacNealy's medical opinion was made utilizing the proper legal standards. Specifically,

the ALJ articulated "good reasons" to discount Dr. MacNealy's opinion. Dr. MacNealy's opinion was not supported by the substantial evidence contained in the record as a whole and was inconsistent with his own treatment records. The ALJ's decision to assign Dr. MacNealy's opinion minimal weight is supported by the substantial evidence contained in the record, as cited to and thoroughly explained by the ALJ, and therefore, no error occurred.

**B. The ALJ's Assignment of Minimal Weight to Dr. Conti's Medical Opinion is Supported by the Substantial Evidence of the Record in its Entirety and Was Made Utilizing Proper Legal Standards.**

Dr. Conti, a mental health professional, had three office visits with Plaintiff – one on January 12, 2015, one on January 22, 2015, and one on February 2, 2015. (Tr. 711-18, ECF No. 11.) Thereafter, on February 25, 2015, she submitted her medical opinion. (*Id.* at 706-07, 710.)Dr. Conti provided her medical opinion by way of filing a Medical Source Statement of Ability to Do Work-Related Activities (Mental). (*Id.*) In the statement, Dr. Conti indicated that Plaintiff has moderate difficulty understanding, remembering, and carrying out simple instructions, moderate difficulty making judgments on simple and complex work-related decisions, and marked difficulty understanding, remembering, and carrying out complex instructions. (*Id.* at 706.) Dr. Conti identified that Plaintiff's own report and her clinical observations led to this conclusion. (*Id.*)

The remainder of Dr. Conti's medical opinion indicated that Plaintiff had marked limitations with respect to interacting with the public, supervisors, and co-workers and marked limitations with responding appropriately to typical work situations. (*Id.* at 707.) Additionally, Dr. Conti indicated that Plaintiff's medical issues are affected by her mental impairment. (*Id.*) In her assessment, Dr. Conti indicated that these conclusions were reached utilizing only Plaintiff's own report. (*Id.*)

In analyzing Dr. Conti's opinion, the ALJ assigned minimal weight rather than controlling weight. (*Id.* at 29-30.) Consistent with legal requirements, the ALJ provided good reasons for discounting Dr. Conti's opinion. (*Id.*) Similar to the analysis surrounding Dr. MacNealy's medical opinion, the ALJ found that Dr. Conti's own treatment records were inconsistent with her assessment. (*Id.*) Contrary to Dr. Conti's assessment, the treatment records of her three office visits with Plaintiff reflect that Plaintiff reported some suicidal thoughts during her first treatment visit, but Dr. Conti recorded no other findings. (*Id.* at 29. *See also id.* at 713-18.) During the second treatment visit, Dr. Conti recorded that Plaintiff had a depressed and anxious mood, but otherwise had an appropriate affect and had no suicidal or homicidal ideations. (*Id.* at 29-30. *See also id.* at 712.) During the third and final office visit, Dr. Conti again recorded that Plaintiff had a depressed mood with focus on regrets over leaving an ex-boyfriend coupled with medical issues, but otherwise Plaintiff demonstrated an appropriate affect with no suicidal or homicidal ideations. (*Id.* at 30. *See also id.* at 711.) Accordingly, the ALJ concluded that Dr. Conti's mild findings in her treatment notes are wholly inconsistent with the "impaired concentration, dissociative symptoms, social withdrawal, daily panic, or impulsive behavior she reported in her assessment." (*Id.* at 30.) The ALJ went further and provided the additional rationale that Dr. Conti's medical opinion should not be afforded "controlling weight" because her "rather dire assessment is nothing more than the unquestioned acceptance of the claimant's subjective statements without clinical support." (*Id.*)

Once again, lack of consistency between a treating source's medical opinion and treatment notes is a "good reason" to assign less than "controlling weight" to the treating source's opinion. Additionally, contrary to Plaintiff's assertion that the ALJ, and subsequently the Magistrate Judge, failed to consider Plaintiff's psychiatric hospitalizations when weighing Dr. Conti's opinion, the record as a whole contains substantial evidence that is inconsistent with Dr. Conti's medical

opinion. Plaintiff specifically argues that because the ALJ did not reference Plaintiff's psychiatric hospitalizations when weighing Dr. Conti's opinion, the hospitalizations were not properly considered and had they been, they would have supported Dr. Conti's opinion. (Obj. to R. & R. 2, ECF No. 18.)

This argument, however, is problematic for the same reasons it was problematic with respect to Dr. MacNealy's medical opinion. The ALJ properly discussed Plaintiff's multiple psychiatric hospitalizations and mental health history in her decision, and appropriately acknowledged that Plaintiff responded positively to treatment and was consistently discharged in a stable and improved mood. (Tr. 20-23, ECF No. 11.) The ALJ also recognized that the record consistently supported the conclusion that Plaintiff's mental health impairments quickly and appropriately respond to treatment, that Plaintiff may experience some mild ongoing mental health symptoms, but generally Plaintiff "is cooperative, exhibits generally normal behavior, logical thought process, and essentially normal thought content." (*Id.* at 25, 27.) Once again, it is clear from the ALJ's statements that she consistently took into consideration Plaintiff's psychiatric hospitalizations, as well as the rest of record before her, when making her decisions. Plaintiff's assertion that the ALJ failed to consider the record as a whole when weighing the opinion of Dr. Conti is not well taken.

Plaintiff also objects to the ALJ's conclusion that Dr. Conti's medical opinion was based upon Plaintiff's subjective report rather than medically acceptable diagnostic techniques. (Obj. to R. & R. 3, ECF No. 18.) Plaintiff hangs her hat on the one instance that Dr. Conti wrote "clinical observation" in her medical opinion when she opined that Plaintiff has moderate difficulty understanding, remembering, and carrying out simple instructions, moderate difficulty making judgments on simple and complex work-related decisions, and marked difficulty understanding,

remembering, and carrying out complex instructions. (Tr. 706, ECF No. 11.) However, this is the only time in her entire medical opinion that she indicates her clinical observations were relied upon. (*Id.* at 706-07, 710.) It is, therefore, clear that the remainder of her dire assessment is based solely upon Plaintiff's subjective complaints as "client report" is cited as the only basis for the balance of her assessment. (*Id.* at 706-07.) It was not unreasonable, nor an error, for the ALJ to conclude that Dr. Conti's opinion was based mainly upon the subjective complaints of Plaintiff as her treatment notes and the substantial evidence contained in the record as a whole conflict with her medical opinion.

Consequently, considering the entirety of this discussion and Plaintiff's objections, this Court overrules Plaintiff's objections. It is clear that the ALJ's determination to assign minimal weight to Dr. Conti's opinion was made utilizing the proper legal standards. Specifically, the ALJ articulated "good reasons" to discount Dr. Conti's opinion. Dr. Conti's opinion was not supported by the substantial evidence contained in the record as a whole, was inconsistent with her own treatment records, and was based primarily, if not wholly, on Plaintiff's own subjective report. The ALJ's decision to assign Dr. Conti's opinion minimal weight is supported by the substantial evidence contained in the entirety of the record, as cited to and explained by the ALJ, and therefore, no error occurred.

## C. Considering Dr. MacNealy and Dr. Conti as Treating Sources Was Harmless Error.

This Court recognizes that the two mental health professionals at issue, Dr. MacNealy and Dr. Conti, might not actually be treating sources according to social security definitions deserving of analysis under the "treating source rule" as analyzed above. (R. & R. 28 n.9, 34 n.11, ECF No. 17; Resp. to Obj. to R. & R. 1-2, ECF No. 19.) A treating source, as defined by the social security regulations, is "[Plaintiff's] own acceptable medical source who provides [Plaintiff], or has

provided [Plaintiff], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [Plaintiff]." 20 C.F.R. §§ 404.1527(a)(2) and 416.927(a)(2) (2017). Precedent demonstrates that a physician who examines a plaintiff only once is not a treating source, as this does not meet the requirement of an "ongoing treatment relationship." *See Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 274 (6th Cir. 2015) (citing *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007)).

However, the rule is less bright line when a physician treats an individual only two or three times. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507 (6th Cir. 2006) ("depending on the circumstances and the nature of the alleged condition, two or three visits often will not suffice for an ongoing treatment relationship"); *Helm v. Comm'r of Soc. Sec.*, 405 F. App'x 997, 1000 n.3 (6th Cir. 2011) ("it is questionable whether a physician who examines a patient only three times over a four-month period is a treating source . . ."); *Mireles ex rel. S.M.M. v. Comm'r of Soc. Sec.*, 608 F. App'x 397, 398 (6th Cir. 2015) (adopting the classification of a physician who provided only three treatments to claimant as a consultant, not a treating source). *See also Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 629 (6th Cir. 2016) (holding that the ALJ's discounting the medical opinion of a physician who only treated plaintiff three times over a three-month period was not improper).

The record reflects that Dr. MacNealy treated Plaintiff only twice prior to submitting his medical opinion regarding Plaintiff's disabled status. (Tr. 1243-1249, ECF No. 11.) Likewise, the record reflects that Dr. Conti treated Plaintiff only three times prior to submitting her medical opinion regarding Plaintiff's disabled status. (*Id.* at 711-718.) The ALJ treated both mental health professionals as treating sources and applied the "treating source rule" despite the limited treatment each mental health professional provided Plaintiff.

This Court sees no reason to disrupt the ALJ's labeling Dr. MacNealy and Dr. Conti as treating sources. In fact, in analyzing Dr. MacNealy and Dr. Conti as treating sources rather than as non-treating sources, the ALJ provided Plaintiff every latitude available. This means that if Dr. MacNealy and Dr. Conti were, in fact, not treating sources, the error by the ALJ was harmless and will not be further analyzed by this Court.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff Tamie Strouse's objections to the Magistrate Judge's Report and Recommendation are OVERRULED. Therefore, the Magistrate Judge's Report and Recommendation is ADOPTED, and the final decision of the Commissioner of Social Security denying Plaintiff's applications for a Period of Disability, Disability Insurance Benefits, and Supplemental Security Income is AFFIRMED.

IT IS SO ORDERED.

DATE: April 12, 2019

/s/ John R. Adams
Judge John R. Adams
UNITED STATES DISTRICT COURT